# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2772 | **DATE** | 10/24/2001 |
| **CASE TITLE** | Abbott Laboratories et al vs. CVS Pharmacy, Inc. et al    (01 C 2772) Glaxo Wellcome, Inc. et al -v- CVS Pharmacy, Inc. et al    (01 C 2784) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Ruling held. **ENTER MEMORANDUM OPINION:** The Court finds that the release provisions in the 1996 Settlement Agreement and in the Abbott Settlement do not bar Revco from pursuing its opt-out litigation. The Plaintiff Manufacturers' motions for summary judgment (Doc 18-1 in 01 C 2772 & Doc 14-1 in 01 C 2784) are denied. The Defendants' motion (Doc 20-1 in 01 C 2772 and Doc 0-1 in 01 C 2784) for summary judgment are denied. All other pending motions are moot.

(11) ■   [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

SCT    courtroom deputy's initials

number of notices

OCT 2 5 2001
date docketed

CM
docketing deputy initials

date mailed notice

Document Number

39

10-7
FILED FOR DOCKETING
01 OCT 24 PM 2: 54

Date/time received in central Clerk's Office

mailing deputy initials

DOCKETED

OCT 2 5 2001

| | | |
|---|---|---|
| ABBOTT LABORATORIES, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | 01 C 2772 |
| CVS PHARMACY, INC., CVS CORP., and CVS REVCO D.S., INC., | ) ) ) | |
| Defendants. | ) ) | |
| GLAXO WELLCOME, INC., MERCK and ZENECA, INC., | ) ) ) | 01 C 2784 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CVS PHARMACY, INC., CVS CORP., and CVS REVCO D.S., INC., | ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the parties' cross motions for summary judgment. For the following reasons, the Plaintiffs' motions are denied and the Defendants' motion is granted.

## BACKGROUND

In the early 1990s, tens of thousands of retail pharmacies of various sizes filed suit against virtually all of the leading manufacturers and wholesalers of brand name prescription drugs, alleging *inter alia* violations of the federal antitrust laws. Pursuant to orders of the Judicial Panel for Multidistrict Litigation, the cases were consolidated in this Court for coordinated or consolidated pretrial proceedings as In re Brand Name Prescription Drugs Antitrust Litigation, Civ. No. 94 C 897, MDL 997 ("MDL 997"). In late 1994, we certified a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure (the "Class"). CVS Pharmacy, Inc. ("CVS Pharmacy"), is a member of the MDL 997 Class. CVS Revco D.S. ("Revco"), which at the time was entitled Revco D.S., Inc., opted out of the Class and joined with other chain retail pharmacies in bringing a case entitled Rite Aid Corp. v. American Home Products Corp., Civ. No. 94-CV-1200 (the "Rite Aid Action"), in the U.S. District Court for the Middle District of Pennsylvania. Two pharmacies purchased by Revco in 1994, Hook-SupeRx, Inc., and its subsidiary Brooks Drug, Inc., also opted out of the Class and brought an independent action in the Middle District of Pennsylvania. See Hook-SupeRx, Inc. v. Abbot Laboratories, Civ. No. 95-CV-0498 (the "Hook-SupeRx Action"). Those actions are currently before this Court for pretrial proceedings as part of MDL 997.

On January 31, 1996, certain MDL 997 defendants, including Glaxo Wellcome, Inc. ("Glaxo"), Merck, Inc. ("Merck"), and Zeneca, Inc. ("Zeneca"), entered into a settlement agreement with the Class. See Complaint in Civ. No. 01 C 2784, Exh. A (the "1996 Settlement"). The Court approved the settlement, as amended, on June 24, 1996. The 1996 Settlement includes a provision releasing the settling defendants from "all claims...any class plaintiff or plaintiffs or any member or members of the Class who have not timely excluded themselves from the Class Action (including any of their past, present or future officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns)...ever had, now has or hereafter can, shall or may have, relating..." to the conduct alleged in the Class complaint. See 1996 Settlement ¶ 15.

On July 14, 1998, MDL 997 defendant Abbott Laboratories ("Abbott") entered into a settlement agreement with the Class. See Complaint in Civ. No. 01 C 2772, Exh. A (the "Abbott Settlement"). The settlement was approved by the Court on September 10, 1998. The Abbott Settlement includes a release provision identical in all relevant respects to the release contained in the 1996 Settlement. See Abbott Settlement ¶ 14. Because they are identical in all aspects relevant to this case, when the court references "the release," we are referring to both provisions.

On May 29, 1997, after the 1996 Settlement but prior to the Abbott Settlement, CVS Pharmacy's parent, CVS Corporation ("CVS Corp.") purchased Revco. As a result of this transaction, CVS Pharmacy and Revco became corporate affiliates. Since that time, Revco has continued to litigate its opt-out claims and those of Brooks and Hook-SupeRx in pretrial proceedings before this Court.

On April 19, 2001, Abbott filed civil action no. 01 C 2772 against CVS Pharmacy, CVS Corp., and Revco (collectively "the CVS Entities"), alleging that Revco's claims in the Rite Aid and Hook-SupeRx Actions are barred by the release provision in the Abbott Settlement. On the same day, Glaxo, Merck, and Zeneca filed civil action no. 01 C 2784 against the same defendants, seeking relief identical to that which Abbott seeks and based on the release provision in the 1996 Settlement. Glaxo then voluntarily dismissed all of its claims as moot pursuant to the Court's June 27, 2001 Order dismissing Glaxo from the Rite Aid and Hook-SupeRx Actions.

On May 14, 2001, the CVS Entities moved to dismiss the complaints in the above-captioned actions. This court denied the CVS Entities' motion to dismiss. Subsequently, the parties filed cross motions for summary judgment. Although the actions have not been formally declared to be related actions, they present virtually identical issues of law and fact for purposes of the parties' motions for summary judgment. In fact, the CVS Entities filed identical briefs in opposition to the Manufacturers's motions in both cases and one memorandum of law in support of its

- 4 -

own motion for summary judgment with regard to Abbott, Merck, and Zeneca (collectively "the Manufacturers"), though Abbott on the one hand, and Merck and Zeneca on the other filed separate motions for summary judgment and separate responses to the CVS Entities' motion. For purposes of judicial economy, as with the motion to dismiss, the court considers the two cases together and our holding applies equally to both. See Abbott Laboratories v. CVS Pharmacy, Inc., 2001 WL 777060, *2 (N.D.Ill. July 11, 2001).

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth

specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

Additionally, the Seventh Circuit has recognized that "summary judgment is particularly appropriate in cases involving the interpretation of contractual documents." Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir. 1989) (citing Metalex Corp. v. Uniden Corp. of America, 863 F.2d 1331, 1333 (7th Cir. 1988)). In that context, "summary judgment should be entered only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms of the contract that forecloses any genuine issues of material fact." Ryan, 877 F.2d at 602. "If a district court determines that the pertinent provisions of the contract are unambiguous, it need not consider extrinsic evidence." Id. "At that point, the

district court should proceed to declare the meaning of those provisions." Id. With these principles in mind, we turn to the issue before us.

## DISCUSSION

The issue before the court is whether the release provisions in the 1996 Settlement Agreement and in the Abbott Settlement Agreement bar Revco from pursuing its opt-out litigation by virtue of the fact that Revco was acquired by CVS Corp., the parent company of class member CVS Pharmacy. The "interpretation of a release is governed by principles of contract law." Estate of Castro, 683 N.E.2d 1255, 1259 (Ill. Ct. App. 1997). Under those principles, "the intention of the parties...controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction." Chubb v. Amax Coal Co., Inc., 125 Ill. App.3d 682, 686, 466 N.E.2d 369, 372 (Ill. App.Ct. 1984). "If the language unambiguously answers the question at issue, the inquiry is over." Emergency Med. Care, Inc. v. Marion Mem'l Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996) (applying Illinois law). Thus, the court's first step is to determine if the language in the release provisions unambiguously answers the issue in this case. We find that it does.

We begin our analysis of the release provisions by emphasizing that the express language of the release makes clear that it does not release the claims of those who timely excluded themselves from the Class Action. The settlement agreements release

the settling defendants from all claims brought by "any class plaintiff or plaintiffs or any member or members of the Class *who have not timely excluded themselves from the Class Action...*" (emphasis added). This clause in the release creates a dichotomy between the claims owned by class members, to which it applies, and the claims of those who opted out of the class, to which it does not apply. All other portions of the release must be read in the context of this express dichotomy. Accordingly, because Revco timely opted out of the litigation, the release does not apply to its separate opt-out claims.

The Manufacturers acknowledge this but argue that the release creates an exception to its exclusion of opt-out plaintiffs by way of the parenthetical which follows the exclusionary language (hereinafter "the 'including' parenthetical"). The "including" parenthetical lists a number of entities (hereinafter "the Enumerated Entities") after the word "including." In support of their argument that the "including" parenthetical overcomes the exclusion of opt-out plaintiff's claims, the Manufacturers assert (1) that the word "including" means "and" or "also" and (2) that the "including" parenthetical modifies the word "claims." Based on these reasons, the Manufacturers conclude that the "including" parenthetical bars all the antitrust claims that any Enumerated Entity has or may have against the settling defendants, regardless of whether or not an Enumerated Entity is a plaintiff who properly opted out of the class.

We find that the two bases the Manufacturers assert in support of their interpretation of the release are contrary to the release's plain meaning. First, the word "including" does not necessarily mean "and" or "also." The word "including" may also delimit or explain preceding text. See United States v. Iron Mountain Mines, Inc., 987 F. Supp. 1233, 1237 (E.D. Cal. 1997); Young v. United States, 315 U.S. 257, 259-61 (1942); Dep't of Treasury v. Muessel, 32 N.E.2d 596, 598 (Ind. 1941); Montello Salt Co. v. Utah, 221 U.S. 452, 464-66 (1911). In fact, the cases the Manufacturers rely on indicate that "including" generally has this more narrow meaning of delimiting preceding text. See Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1466 (Fed. Cir. 1998); The Wausau Ins. Co. v. Dir. Office of Workers Comp. Programs, 114 F.3d 120, 121 (9th Cir. 1997); Adams v. Dole, 927 F.2d 771, 775 (4th Cir. 1991); Sekaquaptewa v. MacDonald, 619 F.2d 801, 804 (9th Cir. 1980); The Newman Co. v. United States, C.D. 2739, 1966 WL 9884, at *6 (Cust. Ct. July 28, 1966). In addition, a review of the cases the parties cite to indicates that the use of the word "including" depends on the context in which it is used. See e.g., Ethicon, 135 F.3d at 1466 (stating that "including" may be used to delimit, but construing it as a phrase of addition in light of other language in the contract); Sekaquaptewa, 619 F.2d at 804 (finding "including" meant "and" only because to do otherwise would lead to "anomalous

results"); <u>Newman</u>, 1966 WL 9884, at *6 (stating "including" has special meaning in tariff terminology).

In the context of the release provisions at hand, we find that "including" is used to delimit preceding text. Our conclusion is based on both the more common meaning attributed to the word "including" and the way the term is used in the release provision – it is enclosed in parenthesis. Text is placed within parentheses to indicate it is being used to explain or delimit preceding text. <u>See</u> WEBSTER'S NEW WORLD DICTIONARY 982 (3rd ed. 1988) (stating parenthetical information meant as an explanation); THE NEW YORK PUBLIC LIBRARY WRITER'S GUIDE TO STYLE AND USAGE 280-81 (Andrea J. Sutcliffe ed. 1994) (instructing information in parenthesis provides extra facts or explains part of sentence and is not always vital to meaning of sentence); SYLVIA CHALKER & EDMUND WEINER, THE OXFORD DICTIONARY OF ENGLISH GRAMMAR 280 (1994) (defining parenthesis as "word, clause, or sentence inserted as an explanation or afterthought into a passage which is grammatically complete without it"); H. RAMSEY FOWLER & JANE E. AARON, THE LITTLE, BROWN HANDBOOK 428 (1989) (explaining that "parenthetical expressions include explanations, facts, digressions, and examples that may be helpful or interesting but are not essential to meaning"); KENNETH G. WILSON, THE COLUMBIA GUIDE TO STANDARD AMERICAN ENGLISH 318 (1993) (explaining that parenthesis are used to set off explanatory information).

Second, we find the Manufacturers' conclusion that the "including" parenthetical modifies the noun "claims" to be incorrect. Rather, "including" modifies and explains the *immediately* preceding text: "class plaintiff or plaintiffs or any member or members of the class who have not timely excluded themselves from the class action." While the preceding text makes clear that Class members cannot bring their claims against the settling defendants, the "including" parenthetical further explains that the Enumerated Entities are also prohibited from bringing the Class members' antitrust claims on behalf of the Class members. This conclusion is supported by the fact that all the Enumerated Entities have one thing in common: they would all potentially be in a position to assert claims through or on behalf of the class members. Because all the Enumerated Entities have this characteristic in common, the "including" parenthetical's purpose is related to that characteristic. <u>See</u> 11 WILLISTON ON CONTRACTS § 32:6 (4th ed. 1999). Therefore, the "including" parenthetical's purpose is to make clear that the Enumerated Entities cannot assert the claims of Class member. The "including" parenthetical ensures that the plaintiff Class members' antitrust claims against the settling defendants are extinguished in every way, shape or form, and thus assures the settling defendants they have obtained complete repose as to all claims the settling Class members may have against them.

The Manufacturers argue that such an interpretation of the "including" parenthetical renders the parenthetical surplusage because the release extinguishes the

Class members' claims without the parenthetical and because the Enumerated Entities lack standing to assert the antitrust claims of the class member plaintiffs. The Manufacturers direct the court's attention to three cases where courts noted that certain types of the Enumerated Entities generally lack standing to bring a suit for antitrust injuries allegedly sustained by a corporation. See Air Courier Conference of Am. v. Am. Postal Workers Union, AFL-CIO, et. al., 498 U.S. 517, 528 n. 5 (1991) (noting that employees have *generally* been denied standing to enforce competition laws) (emphasis added); State of Illinois ex. rel. v. Ryan, 227 F.3d 1042, 1046 (7th Cir. 2000) (stating "*normally* only consumers or competitors have standing") (emphasis added); O'Regan v. Arbitration Forums, Inc., 121 F.3d 1060, 1065 (7th Cir. 1997).

The Manufacturers' argument is not persuasive. First, the cases merely noted that only four of the nineteen Enumerated Entities – employees, stockholders, officers, and directors – may not have antitrust standing as a general matter. Second, these same types of Enumerated Entities may have standing in some cases. See PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW § 353(e) (2d ed. 2000); John Peterson Motors, Inc. v. GMAC, 613 F. Supp. 887 (D. Minn. 1985) (finding officer, directors and shareholder had standing). Indeed, the question of whether a particular individual or entity has antitrust standing is "ultimately a product of the particularities of each case." Sanner v. Bd. of Trade, 62 F.3d 918, 927 (7th Cir. 1995); see Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 349 (1990) (instructing that a

plaintiff has standing under § 4 of the Clayton Act if he proves he "suffered an injury that (1) is of the type the antitrust laws were intended to prevent and (2) flows from that which makes the defendant's acts unlawful"); <u>Allied Signal, Inc. v. B.F. Goodrich Co.,</u> 183 F.3d 568, 575 (7th Cir. 1999) (stating there are "several factors to be considered in determining whether a plaintiff is a proper party to bring a private action under the antitrust laws" and listing factors). Accordingly, a particular type of entity does not lack standing per se. Third, the Manufacturers cite no cases that held an "affiliate" – the type of Enumerated Entity at issue here – did not have antitrust standing. Therefore, the court finds that the "including" parenthetical serves the purpose of making clear that the claims of Class members may not be brought by the Class members themselves or by others through or on their behalf by virtue of a relationship with them. The parenthetical is not surplusage; the parties added it to be cautious and to clarify that the Class members' claims were completely extinguished. <u>See e.g.,</u> <u>Young</u>, 315 U.S. 257, 261 (1942).

In addition to their arguments pertaining to the "including" parenthetical, the Manufacturers also assert that the release's reference to a Class member's future claims – the language stating "ever had, now has or hereafter can, shall or may have" – was intended to preclude a Class member from acquiring opt-out claims and therefore prevents CVS Corp. from litigating Revco's claims. Before addressing the factual errors in the Manufacturers' reasoning, we note that their interpretation of the language

-13-

at issue is incorrect. The language refers only to future claims the releasors themselves – the Class member plaintiffs – may have based on their relationship with the settling defendants up until the time the settlement agreement was signed and which they may not be aware of at that time. See Fisher Dev. Co. v. Boise Cascade Corp., 37 F.3d 104, 108 (3d Cir. 1994) (explaining such standard language refers to claims that releasors "might subsequently discover based on their relationship prior to the execution of the release"); Thompson v. Wheeler, 898 F.2d 406, 411 (3d Cir. 1990) (stating such language refers to losses to the releasor which are not known when the settlement is reached); Maguire v. Micromex North Am., Inc., 1998 WL 355528, at *3 (N.D. Ill. June 24, 1998) (stating courts should not recognize releases of claims not known to or contemplated by parties at time of executing release) (applying Illinois law); Carona v. Illinois Cent. R. Co., 203 Ill. App.3d. 947, 951, 561 N.E.2d 239, 241 (Ill. App. Ct. 1990) (same).

The Manufacturers' argument also fails because it is factually erroneous. The relevant Class member here did not acquire Revco's claims. The Class member is not CVS Corp.; it is CVS Pharmacy. Indeed, the court addressed this issue when it was raised by Searle in a motion to enforce the class judgment against Revco. In re Brand-Name Prescription Drugs Antitrust Litig., Slip. Op. at 7 (N.D. Ill. Nov. 1, 2000). The fact that Class member CVS Pharmacy did not acquire Revco's opt-out claims is undisputed.

Nor did CVS Corp. acquire ownership or control of Revco's opt-out litigation. Revco and CVS Corp. have taken adequate measures to keep the class litigation and Revco's opt-out claims separate and distinct. In re Brand-Name Presciption Drugs Antitrust Litig., Slip. Op.; (Lankowsky Dec. ¶¶ 6, 10). After the CVS/Revco transaction, Revco continued to spend millions of dollars to pursue its opt-out litigation. (Lankowsky Dec. ¶ 9; Staph Dec. ¶ 8). In addition, CVS Pharmacy's Class action litigation and Revco's opt-out litigation have followed separate strategies with separate counsel. (Lankowsky ¶ 10). Furthermore, Revco did not submit claims in connection with the class's multi-million dollar settlement with certain defendants. (Lankowsky ¶ 13). Nor were Revco's damage claims submitted as part of the overall damages claim at the class trial. See In re Brand-Name Presciption Drugs Antitrust Litig., Slip. Op. Moreover, Revco, at times, took positions in its opt-out litigation that were contrary to those of the Class plaintiffs. See e.g., In re Brand Name Prescription Drugs Litig., 1996 WL 351180 (N.D. Ill. June 24, 1996); Class Plaintiffs' Motion to Compel Individual Plaintiffs to Produce Defendants' Computer Tapes for Copying. Therefore, the ownership of Revco's claim has remained with Revco.

The Manufacturers base their argument that CVS Corp. owns and controls Revco's litigation on CVS Corp.'s Quarterly Report, Form 10-Q filed Aug. 11, 1998. In this report, reference is made to "CVS" being a party to the Revco opt-out litigation. The Quarterly Report also notes some of the actions the companies were taking toward

integration. This information does not establish that CVS Corp owned or controlled Revco's opt-out claims. The CVS Entities have explained that the Quarterly Report was a consolidated statement and that reference to "CVS" being a party to the Revco opt-out case was simply a reference to the fact that a CVS-related entity – Revco, not CVS Corp. – was a party to that suit. (Lankowsky Dec. ¶ 10). This, along with all the evidence showing that Revco has retained control of its opt-out litigation and kept it separate from the class litigation, fully rebut the Manufacturer's reliance on the Quarterly Report. In any event, even if CVS Corp. acquired ownership and control of Revco's claims, the release would not bar Revco's claims because CVS Corp. was not a Class member and, therefore, could not release Revco's claims.

In an attempt to circumvent the facts which establish that CVS Corp. and CVS Pharmacy did not control or own Revco's opt-out claims, the Manufacturers submit that CVS Pharmacy had the authority to release Revco's opt-out claims when CVS Pharmacy signed the settlement agreements. They find this authority in a complex agency theory whereby CVS Pharmacy acted as the agent of CVS Corp. in signing the settlement agreement and, in turn, CVS Corp. acted as Revco's agent and released Revco's opt-out claims. The Manufacturers' mysterious agency theory, which they support with no case law, fails from the outset. CVS Pharmacy did not act as the agent of its parent, CVS Corp., in signing the settlement agreements. (Lankowsky Dec. ¶ 4).

Additionally, as we have already explained, CVS Pharmacy was not representing Revco during the settlement agreement. In re Brand-Name Presciption Drugs Antitrust Litig., Slip. Op. at 9-10.  Once Revco opted out of the Class, the Class members and their representatives had no authority to bind Revco to any terms of the Class litigation. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810-11 (stating "if the plaintiff takes advantage of the opportunity to opt-out of the class, the plaintiff is removed from the litigation entirely"); Sarasota Oil Co. v. Greyhound Leasing & Fin. Corp., 483 F.2d 450, 452 (10th Cir. 1973) ("one of the primary purposes of the notice requirement is to afford an opportunity for (b)(3) class members to avoid being bound by a class action judgment and to permit them to litigate their own claims..."); Int'l Union of Electric, Electrical, Salaried, Machine & Furniture Workers v. Unisys Corp., 155 F.R.D. 41, 48 (E.D.N.Y. 1994) (stating class representatives and their counsel "have no power to release claims with respect to persons that they do not represent").

Other provisions in the settlement agreements further indicate that the release bars only the claims of the Class member plaintiffs and not the claims of plaintiffs who opted out. See WILLISTON § 32.5 (instructing "a contract will be read as a whole and every part will be read with reference to the whole"). The "Therefore" Clauses of both the 1996 Settlement and the Abbott Settlement state that the purpose of each settlement agreement is to ensure that "all claims of the class plaintiffs be settled." 1996 Settlement at 3; Abbott Settlement at 3. Additionally, the 1996 Settlement Agreement:

provides for entry of final judgment against "all class plaintiffs and members of the class *who have not timely excluded themselves* from the Class Action," ¶ 6(ii) (emphasis added); directs the clerk of the court to provide defendants with a list of opt-out plaintiffs – a provision intended to advise defendants of the claims that remain alive, ¶ 5(e); and states that "class plaintiffs and the members of the class *who have not timely excluded themselves* from the Class Action shall look solely to the settlement fund for settlement in satisfaction against the settling defendants of all the claims that are released hereunder," ¶ 9 (emphasis added). The Abbott Settlement contains the same language. ¶ ¶ 5(e); 6(ii); 9.

Accordingly, the court finds that the language of the release paragraphs in the 1996 Settlement and the Abbott Settlement unambiguously shows that the parties to those agreements intended to release only the claims of the Class member plaintiffs and not the claims of those who timely and properly opted out of the Class. As such, our analysis may end here, and we need not consider any extrinsic evidence of the parties' intent. Ryan, 877 F.2d at 602; Emergency Med. Care, 94 F.3d at 1061. Had we found the language in the release provisions ambiguous, however, the extrinsic evidence in the record would nonetheless lead us to the same conclusion.

The circumstances surrounding the settlement agreements indicate that the parties intended to exclude the opt-out plaintiffs' claims. In seeking approval for the 1996 Settlement, the Class plaintiffs informed this court that the "individual

actions...are not affected by the proposed settlement." (Class Plaintiffs' Memorandum in Support of their Motion for an Order Preliminarily Approving Settlements with the Settling Defendants at 3 n. 2). Similarly, during the Abbott Settlement, the Class plaintiffs assured this court that "The Settlements are on behalf of the class certified in this court's November 15, 1994 Order and do not include plaintiffs in any non-class actions." (Class Plaintiffs' Memorandum in Support of Motion for Final Approval of Settlements at 3). Additionally, when Revco and some of the other opt-out plaintiffs objected to the Most Favored Nations clause in the class settlement agreement, the Class plaintiffs opposed the objection on the ground that the opt-out plaintiffs are "non-parties to the class actions settlement" and that it was "clear that the individual plaintiffs are not class members, intervenors or parties to the class settlement agreement before the Court." (Class Plaintiffs' Memorandum in Support of Amended Settlements at 11). Therefore, the circumstances surrounding the settlement agreements reflect the parties' intent that the opt-out plaintiffs not be bound by those agreements.

In addition, we note that the Manufacturers' own conduct indicates that the release does not bar Revco's opt-out claims. If it did, we have no doubt that the Manufacturers would have asserted the issue immediately after the respective settlements agreements went into effect – June 24, 1996 with respect to Merck and Zeneca and September 10, 1998 with regard to Abbott. Instead, the Manufacturers waited for a significant period of time before doing so – Merck and Zeneca almost five

years and Abbot almost three years.  Rather than raising a release defense immediately

upon its availability, the Manufacturers continued to litigate against the opt-out

plaintiffs:  prosecuting an appeal on *Illinois Brick* issues, moving for partial summary

judgment on certain damage issues, and engaging in discovery and other procedural

disputes.  The Manufacturers' delay is "powerful evidence" that the release does not

mean what they are currently advocating it means.  W. Alton Jones Found. v. Chevron

U.S.A., Inc., 97 F.3d 29, 33-35 (2d Cir. 1996) (stating delay of three years in raising

release defense showed the defendant had "contrived the theory long after the fact")

(citing Ocean Transp. Line, Inc. v. Amercian Philippine Fiber Indus., 743 F.2d 85, 91

(2d Cir. 1984); Restatement (Second) of Contracts § 202 cmt. g); see Old Colony Trust

Co. v. Omaha, 230 U.S. 100, 118 (1913) (stating "practical interpretation of a contract

by the parties to it for any considerable period of time before it comes to be the subject

of controversy is deemed great, if not controlling, influence").

Finally, we note that our conclusion is consistent not only with the parties' intent

as evidenced by the plain meaning of the release and the circumstances surrounding its

execution, but also with the Due Process principles underlying a plaintiff's right to opt-

out of a class.  The opt-out notice Revco received stated:  "If you request exclusion,

you will not be entitled to share in the benefits of any settlement or other recovery

obtained in these actions and will not be bound by any judgment."  Revco requested

exclusion.  The Manufacturers' contorted interpretation of the release provisions at

issue renders Revco's decision to opt-out meaningless and completely forecloses Revco's avenue of recovery. Such an outcome is irreconcilable with notions of justice and fair play. See Shutts, 472 U.S. at 810-11; Matsushita Electric Indus. Co. v. Epstein, 516 U.S. 367, 385 (1996) (stating class action plaintiffs should opt out if they wish to "preserve absolutely their right to litigate"); see also In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1134-36 (7th Cir. 1979) (stating court has "searched the reported decisions in vain" for precedent allowing approval of class release extinguishing claims of those who do not benefit from settlement). Indeed, the Manufacturers cite no case in which a court has bound an opt-out plaintiff to a release rendered in the class litigation. Just as binding an opt-out plaintiff to a class judgment would do violence to principles of Due Process, so too would binding an opt-out plaintiff to a release to which he was not a party. See Shutts, 472 U.S. at 810-11; Nov. Op.; In re TransOcean Tender Offer Litig., 427 F. Supp. 1211, 1218 (N.D. Ill. 1977).

In sum, the plain meaning of the release unambiguously indicates that it does not apply to Revco's opt-out claims. The circumstances surrounding the settlement agreements further support our conclusion that the parties to the settlement agreements did not intend that those agreements have any effect on, much less release, the opt-out plaintiffs' claims. Finally, our decision is consistent with the Due Process principles behind a plaintiff's choice to opt-out of class litigation.

CONCLUSION

For the foregoing reasons, the court finds that the release provisions in the 1996 Settlement Agreement and in the Abbott Settlement do not bar Revco from pursuing its opt-out litigation. The Plaintiff Manufacturers' motions for summary judgment are denied. The Defendants' motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated: _____ October 24, 2001 _____